**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KENTRELL HARRELL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-0989** |
| **N. BURL CAIN, WARDEN** | **SECTION "R"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.    **Procedural History of the Captioned Case**

On August 9, 2012, the undersigned issued a Report and Recommendation in which it was recommended that the federal habeas corpus petition filed by the petitioner, Kentrell Harrell ("Harrell"), be dismissed without prejudice failure to exhaust state court remedies as to four of his five claims raised, unless Harrell dismissed the unexhausted claims.[2]

Harrell filed objections in which he requested that he be allowed to abandon two of the unexhausted claims and that the one exhausted claim, sufficiency of the evidence, be stayed to allow him to exhaust the other two unexhausted claims.[3]  On September 21, 2012, the District Judge

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 17.

[3]Rec. Doc. No. 18.

adopted the Report and ordered that Harrell's mixed petition be dismissed without prejudice, finding no good cause to grant a stay.[4]  Harrell appealed the decision and later moved the District Court to allow him to abandon the unexhausted claims and to proceed with the exhausted sufficiency of the evidence claim.[5]  The District Court resolved that it was without jurisdiction to consider the motion because of the pending appeal.[6]  The United States Fifth Circuit Court of Appeal later remanded the matter for the District Court to consider Harrell's sufficiency of the evidence claim.

## II.   <u>Factual Background</u>

Harrell is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[7]  On July 31, 2003, Harrell was indicted by a Grand Jury in Orleans Parish for second degree murder.[8]  He entered a plea of not guilty to the charge on August 5, 2003.[9]

The record reflects that, on June 8, 2003, at about 9:30 p.m., Caprice Anderson ("Anderson") was shot and killed in front of her grandmother's house in the 3100 block of Lawrence Street in New Orleans.[10]  The autopsy performed by Dr. Gerald Liuzza, a forensic pathologist, revealed that Anderson died from a single gunshot wound to the right side of her forehead.  According to Dr.

---

[4]Rec. Doc. No. 19.

[5]Rec. Doc. Nos. 22, 23.

[6]Rec. Doc. Nos. 24, 25.

[7]Rec. Doc. 3.

[8]St. Rec. Vol. 2 of 7, Indictment, 7/31/03.

[9]St. Rec. Vol. 2 of 7, Minute Entry, 8/5/03.

[10]The facts and relevant footnotes were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Harrell*, 965 So. 2d 479, 481-485 (La. App. 4th Cir. 2007); St. Rec. Vol. 2 of 7, 4th Cir. Opinion, 2007-KA-0202, pp. 2-9, 8/1/07.  The Louisiana Fourth Circuit opinion indicated that the shooting took place at 3110½ Lawrence Street; the trial transcript reflects that the shooting occurred at 3100/3100½ Lawrence Street.

Liuzza, the presence of stippling surrounding the wound indicated that the shot was fired from only a few inches away.  He also found bruises on Anderson's legs, arm, and hip.

Anderson regularly visited her grandmother's house, because her grandmother watched her children.  Anderson at the time was dating Harrell, who lived down the street from her grandmother.  About one week before the shooting, Anderson showed her cousin, Arieal Brewer ("Brewer"), bruises that she said Harrell had inflicted on her.  She also told Brewer that Harrell had threatened to kill her, and that the two had argued the day before the shooting at Harrell's birthday party.

On the morning of the shooting, Brewer was already at their grandmother's home when she saw Anderson's car in front of Harrell's home.  Anderson was dropping-off Harrell and some of his possessions.  Later that day, shortly before the shooting, Anderson called Brewer and asked her to accompany her to Harrell's house, because she had more things to drop off.  Anderson told Brewer that she wanted Brewer with her in case Harrell became violent.  Anderson asked Brewer to call Harrell's house, and when she did so the line was busy.  Anderson then told Brewer that she was on her way to pick her up, and they ended the call.

Brewer remained in the front room near the door waiting for Anderson to arrive.  Their uncle, Keith Harris, was also at the house, where he lived with his mother, watching television in another room.  Within thirty seconds after hanging up the phone, Brewer heard a shot.  Her uncle also heard the shot.  Brewer ran out of the front door to find Anderson lying on the ground.  She soon noticed Harrell standing nearby and yelled, "You killed my cousin."  Harris, whose leg was amputated, moved his wheelchair outside in time to see Brewer "tussling" with Harrell.  Harris threw himself out of his wheelchair and down the stairs to check on Anderson.  After briefly fighting with Brewer, Harrell tried to open Anderson's car and then he ran from the scene.

3

Harrell's mother's boyfriend, Darrell Lassere, who was an emergency medical technician, heard the shot and a woman screaming. Lassere recalled sending Harrell down the street to see what happened. When Harrell returned, he told Lassere that Anderson had been shot and Lassere took his medical bag to the scene to check on Anderson. Harris, however, would not allow the man near Anderson. Both Harris and Brewer told police that Harrell shot Anderson.[11]

Harrell was soon located and detained by New Orleans Police Officer Michael Hamilton a few blocks from the scene. Approximately two hours after the shooting, Detective Ronald Ruiz questioned Harrell at the police station and advised him of his rights. Harrell admitted to the officers that he and Anderson were romantically involved, and insisted that they had a good relationship. Denying any domestic violence, Harrell told officers that he and Anderson would "play fight" and would give each other "love taps." He also stated that he was at home sleeping when he heard the gunshot and that he had just arrived at the scene when Brewer and Harris exited the house. When Detective Ruiz questioned Harrell as to how he arrived at the scene before the others if he was at home sleeping, Harrell replied, that "[y]ou won't be able to prove I killed her because there are no witnesses." At that point, Harrell indicated he wanted an attorney, and the questioning stopped.

At the scene, the officers seized one spent nine-millimeter casing. They also seized from Anderson's car some shoes and men's clothing, as well as copies of a birth certificate and social security card in Harrell's name. The officers also seized the clothing Harrell was wearing when he

---

[11]Soon after the murder, the police also received information that the person responsible for Anderson's murder could be found in a certain vehicle seen on General DeGaulle Drive. Officers located and stopped the vehicle and detained its occupants. Inside the vehicle the officers found two guns, but the caliber of the guns was not consistent with the nine-millimeter casing found on the scene. The officers released the occupants of the vehicle.

was arrested.  Detective Ruiz also obtained a search warrant for Harrell's house where the officers seized nine-millimeter ammunition, a rifle found in the attic, and some handguns.[12]

Harrell was tried before a jury and was found guilty as charged on August 15, 16 and 18, 2006.[13]  On September 25, 2006, the state trial court denied Harrell's motions for a new trial and for post-verdict judgment of acquittal.[14]  That same day, the Court sentenced Harrell to a mandatory sentence of life imprisonment at hard labor to be served without benefit of parole, probation, or suspension of sentence.[15]  The Court also denied Harrell's motion to reconsider the sentence.[16]

On direct appeal, Harrell's appointed counsel raised two assignments of error:[17] (1) the evidence at trial was insufficient to support the verdict; and (2) Harrell was deprived of his fundamental right to a fair trial by "repeated, improper, references to his post-arrest silence and his silence at trial such that a mistrial should have been declared."  Harrell also submitted *pro se* a supplemental brief further addressing the sufficiency of the evidence.[18]  The Louisiana Fourth Circuit affirmed Harrell's conviction and sentence on August 1, 2007, finding no merit in the first claim and finding the second claim to be in procedural default and alternatively to be meritless.[19]

---

[12]The record indicates that this evidence was not available for trial because it damaged or lost in the flood following Hurricane Katrina.  Any surviving evidence was sent for remediation and had not yet been returned.

[13]St. Rec. Vol. 2 of 7, Trial Minutes, 8/15/06; Trial Minutes, 8/16/06; Trial Minutes, 8/18/06, Jury Verdict Form, 8/18/06; St. Rec. Vol. 4 of 7, Trial Transcript, 9/15, 16, 18/06.

[14]St. Rec. Vol. 2 of 7, Sentencing Minutes, 9/25/06; Motion for New Trial, undated; Motion for Post-Verdict Judgment of Acquittal, undated.

[15]St. Rec. Vol. 2 of 7, Sentencing Minutes, 9/25/06; St. Rec. Vol. 4 of 7, Sentencing Transcript, 9/25/06.

[16]*Id.*; St. Rec. Vol. 2 of 7, Motion to Reconsider Sentence, undated.

[17]St. Rec. Vol. 4 of 7, 4th Cir. Appeal Brief, 2007-KA-0202, 3/7/07.

[18]St. Rec. Vol. 4 of 7, *Pro Se* Supplemental Brief, 2007-KA-0202, 6/26/07.

[19]*State v. Harrell*, 965 So. 2d at 487; St. Rec. Vol. 2 of 7, 4th Cir. Opinion, 2007-KA-0202, 8/1/07.

On August 28, 2007, Harrell submitted a writ application to the Louisiana Supreme Court, in which he argued only that the evidence was insufficient to support the verdict.[20]  On March 28, 2008, the Court denied the writ application without stated reasons.[21]  Harrell's conviction became final 90 days later, June 26, 2008, when he did not file a writ of certiorari with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## III.  <u>State Procedural History</u>

On August 23, 2009, Harrell submitted an application for writ of mandamus to the Louisiana Fourth Circuit.[22]  Harrell claimed therein that, on August 18, 2008, he mailed an application for post-conviction relief to the state trial court on which the Trial Court had not ruled.[23]  He attached a purported copy of the application in which he raised seven grounds for relief:[24] (1) the prosecution introduced inflammatory and irrelevant evidence which directly prejudiced his defense; (2) the trial court allowed the prosecution to enter documentary evidence that could not be supported by physical evidence denying his confrontation rights; (3) the prosecution introduced false and misleading evidence related to the evidence seized from his mother's house; (4) the trial court allowed prejudicial and inadmissible hearsay evidence to be presented to the jury over defense counsel's

---

[20]St. Rec. Vol. 5 of 7, La. S. Ct. Writ Application, 07-KO-2187, 11/9/07 (dated 8/28/07, postal metered 8/29/07).

[21]*State v. Harrell*, 978 So. 2d 305 (La. 2008); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2007-KO-2187, 3/28/08.

[22]St. Rec. Vol. 6 of 7, 4th Cir. Writ Application, 2009-K-1175, 8/28/09 (dated 8/23/09).

[23]*Id.*; St. Rec. Vol. 6 of 7, Inmate Request for Legal/Indigent Mail, 8/18/08.

[24]St. Rec. Vol. 6 of 7, Copy of Application for Post-Conviction Relief, dated 8/18/08.

objections; (5) he received ineffective assistance of counsel during trial; (6) his right to judicial review was violated due to the absence of material witness testimony from the transcript; and (7) he received ineffective assistance of appellate counsel for failure to present meaningful claims and recognize the incomplete transcript.[25]

On September 16, 2009, the Louisiana Fourth Circuit denied the application.[26]  The Court did so after it reviewed Harrell's post-conviction claims and found that he was not entitled to relief.

The Louisiana Supreme Court also denied Harrell's subsequent writ application on October 1, 2010, without stated reasons.[27]

## IV.    General Standards of Review of the Federal Petition

As noted previously, on April 29, 2011, the clerk of this Court filed Harrell's petition for federal habeas corpus relief in which he raised five grounds for relief.[28]  Presently before the Court remains one claim, that the evidence at trial was insufficient to support the verdict.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[29] applies to this petition, which is deemed filed in this court under the federal

---

[25]St. Rec. Vol. 6 of 7, Post-Conviction Relief Brief, 440-910, 8/18/08.

[26]St. Rec. Vol. 6 of 7, 4th Cir. Order, 2009-K-1175, 9/16/09.

[27]*State v. Harrell*, 45 So.3d 1091 (La. 2010); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2009-KH-2295, 10/1/10.; La. S. Ct. Writ Application, 09-KH-2295, 10/21/09 (dated 10/13/09).

[28]Rec. Doc. 3, 3-2.

[29]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

mailbox rule on April 29, 2011.[30]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The Court has already resolved the timeliness of the petition and exhaustion.  The record does not reflect that the remaining sufficiency of the evidence claim is in procedural default. Therefore, the Court will address the merits of that claim.

**V.      Standards of Review of the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court

---

[30]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Harrell's federal habeas petition on April 29, 2011, when his motion to proceed *in forma pauperis* was granted.  Harrell's signature on the petition is dated April 11, 2011.  This is presumed to be the earliest date on which he could have submitted the pleadings to prison officials for mailing to the Court.

findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id*.  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

9

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).   In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VI.    Sufficiency of the Evidence (Claim No. 1)

Harrell argues that the circumstantial evidence did not foreclose the reasonable possibility that he was innocent where there was no direct evidence to prove that he was the perpetrator.  The Louisiana Fourth Circuit considered this claim on direct appeal.

Relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state case law, the Louisiana Fourth Circuit thoroughly reviewed the evidence and testimony presented to the jury and found that the evidence, in the light most favorable to the prosecution, supported the guilty verdict. The Court also noted that the credibility calls made by the jury were not to be second guessed and the evidence was not to be re-weighed.  This was the last reasoned opinion on this issue because the Louisiana Supreme Court denied relief without stated reasons.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state courts, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence. Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord State v. Williams*, 693 So.2d at 208. The appropriate standard for this Court remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at

the trial.") (quoting *Jackson*, 443 U.S. at 324).   The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).   All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

        In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

        Claims of insufficient evidence present a mixed question of law and fact.  *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*.  *Gilley*, 968 F.2d at 467 (citing *Schrader*, 904 F.2d at 284).

Harrell was charged with and convicted of second degree murder, which is defined in relevant part by Louisiana law as "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. Ann. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1).

Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). Specific intent to kill also can be implied by the intentional use of a deadly weapon, such as a knife or a gun. *State v. Collins*, 43 So.3d at 251 (citing *State v. Brunet*, 674 So.2d 344, 349 (1996)). Thus, to establish specific intent, the State must show that the defendant pulled the trigger, that he acted in concert with an accomplice or co-perpetrator, or that he actively acquiesced in the use of deadly force. *State v. Tate*, 851 So.2d at 930.

To prove Harrell's guilt, the State would have to establish that he killed Anderson and that he had the specific intent to kill her or to inflict great bodily harm upon her. The record in this case supports the findings made by the state courts.

The evidence established that Brewer was waiting for Anderson to arrive at their grandmother's house so that she could accompany Anderson to Harrell's home to drop-off some of his belongings.[31] Anderson was trying to break up with Harrell and told Brewer that Harrell was going to kill her.[32] Anderson also had previously shown Brewer one of the bruises on her legs

---

[31] St. Rec. Vol. 4 of 7, Trial Transcript, pp. 104 (Brewer), 8/15, 16/ 18/06.

[32] *Id.*, pp. 109-10 (Brewer).

caused by Harrell.[33]  This bruise was in the same place as one of the bruises seen in the autopsy photographs.[34]

Shortly after she hung up her phone, Brewer heard a gunshot outside of the house.[35]  When she opened the door, she saw Anderson lying on the ground.[36]  As she got to the body, she saw Harrell standing nearby as if he was looking for something.[37]  She yelled out that he had killed her cousin.  The two fought for a few minutes next to Anderson's car before Harrell ran from the scene.

Harris, the girls' uncle, also exited the family home immediately behind Brewer after he heard the shot.  He too saw Harrell near Anderson's body as if he was looking for something.[38]  As Harris dragged himself to Anderson's body, he saw Harrell and Brewer fighting and saw Harrell run from the scene.[39]  Harrell was eventually apprehended several blocks away from the scene of the shooting.[40]

The testimony at trial also established that Anderson died as a result of the single gunshot wound to her right forehead, which traveled through her brain and fractured the interior back of her skull, where the 9mm bullet was recovered by Dr. Liuzza.[41]  The doctor estimated that the gun was

---

[33]*Id*., p. 104 (Brewer).

[34]*Id*., p. 113 (Brewer).

[35]*Id*., pp. 105-06 (Brewer).

[36]*Id*., p. 107 (Brewer).

[37]*Id*., pp. 108-09 (Brewer).

[38]*Id*., p. 99 (Harris).

[39]*Id*., pp. 87-89, 91, 93 (Harris).

[40]*Id*., pp. 82 (Officer Hamilton).

[41]*Id*., p. 10 (Dr. Liuzza).

less than one-foot from her head when it was fired.[42]  He also noted fairly recent bruising to her arms, legs and hips received before her death.[43]

The police recovered the spent casing of the 9mm bullet that killed Anderson and which was the same caliber as the ammunition found in Harrell's home.[44]  During his questioning by police, Harrell did not confess but instead told Officer Ruiz that the police would not be able to prove that he shot Anderson because there were no witnesses.[45]

The jury had before it sufficient evidence to establish that Harrell had threatened to kill Anderson and had beaten her and argued with her in the days before the shooting.  The jury clearly believed the testimony that Harrell was standing near the body seconds after the shot rang out.  He also ran from the scene, rather than stay to speak with police or determine the fate of Anderson.  His actions were sufficient for the jury to resolve that he was the shooter with specific intent to kill her or cause her great bodily harm.

The jury also clearly chose not to believe the testimony of Lassere, the boyfriend of Harrell's mother, when he testified that Harrell was at home when the shooting happened and that Harrell returned to their house where he later was taken into custody by police.[46]  This credibility determination is not to be questioned by a court on collateral review.

---

[42]*Id.*, pp. 11-12 (Dr. Liuzza).

[43]*Id.*, pp. 12-15 (Dr. Liuzza).

[44]*Id.*, pp. 27, 29 (Detective Ruiz).

[45]*Id.*, p. 35 (Detective Ruiz).

[46]*Id.*, pp. 162-163, 165-66, 171 (Lassere).

The evidence was sufficient under *Jackson* to support the jury's verdict finding Harrell guilty of second degree murder.  The state courts' denial of relief was not contrary to or an unreasonable application of federal law.  Harrell is not entitled to relief on this claim.

**VII.**   **Recommendation**

For the foregoing reasons, it is **RECOMMENDED** that Kentrell Harrell's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[47]

New Orleans, Louisiana, this 7th day of January, 2014.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[47]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.